IN RE PETITION TO CONDEMN LANDS: SCHOMBERG and others, Appellants, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Respondent.

*November 7, 1928—January 8, 1929.*

For the appellants there was a brief by *Pellette & Zillmer* of Milwaukee, attorneys for Frederick J. Zweifel and Julia Schomberg, and by *F. E. Jenkins* of Milwaukee, attorney for Meta E. Gaenslein Wegener, and oral argument by *Raymond T. Zillmer*.

For the respondent there were briefs by *Henry J. Killilea, Rodger M. Trump,* and *Clifton Williams,* all of Milwaukee, and oral argument by *Mr. Trump* and *Mr. Williams.*

DOERFLER, J. The Chicago, Milwaukee, St. Paul & Pacific Railroad Company filed a petition pursuant to chapter 32 of the Statutes of Wisconsin for the condemnation of a certain strip of land belonging to Frederick J. Zweifel, Julia Schomberg, and Meta E. Gaenslein Wegener, for sidetracks, storage tracks, switch-yard and car-storage yards. It is alleged in the petition that the petitioner was unable to acquire said land at an agreed price. The landowners, who appeared in these proceedings, objected to the taking of the lands, first because it appears from the evidence that no sufficient effort had been made to procure such lands from the owners by purchase.

The present petition is the second petition filed in said matter, so that when the new petition was filed and the owners notified thereof, it must be assumed that they were fully informed as to the nature and purpose of the proceedings. One Ellington, a real-estate agent, during the month of March, 1928, individually called upon these three owners for the express purpose of making a *bona fide* effort to acquire their property by purchase, so as to comply with the provisions of the statutes in that respect. In his effort to negotiate with the owners he handed to each an offer in writing which described the property, and which further read as follows:

"We believe that a fair offer for the above-described property is on the basis of thirty-five hundred ($3,500) dollars per acre, and I, the undersigned, as real-estate agent for the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, do hereby make you that offer. If you are agreeable to the acceptance of this offer, indicate same by signing at the bottom of this letter. If you reject the offer, will you also indicate that fact on the bottom of this letter? Yours truly."

One of these offers was signed by Mr. Ellington, and the other two were not signed by him or any one else. It appears from the evidence that the owners of the property were able to read and understand the English language. None of them accepted this offer. Furthermore, the owners did not come back with a counter offer to sell for any other or different figure. They did, however, indicate that they would confer with their attorneys in the matter, but no further negotiations were sought either by the attorneys for the owners or by the owners themselves.

A careful reading of the testimony in this case upon the subject of negotiations for the purchase of this property clearly indicates that the owners were hostile to the condemnation, and the attitude taken during the entire proceedings is confirmatory of such hostility. The purpose of the statutory provision requiring a *bona fide* effort to purchase is for the benefit of all the parties, for the reason that a successful negotiation saves time and expense and avoids the hostility which ordinarily accompanies a taking by condemnation proceedings.

The trial court was satisfied that a *bona fide* effort had been made by the company and that the statutes were complied with, and so held. We believe that the court's ruling should not be disturbed.

Counsel for the landowners further argue that the testimony introduced in the proceedings does not show a public necessity for the taking of the lands sought to be condemned. Sec. 32.07 (2) and (3) of the Statutes provide as follows:

"(2) If the application be by a town or county, or by a board, commission or public officer; or for the right of way for a railroad or a street or interurban railway up to one hundred feet in width, or a telegraph, telephone or electric line, or for easements for the construction of any elevated structure or subway for railroad, street or interurban railway purposes, the petitioner shall determine the necessity.

"(3) In all other cases, the judge shall determine the necessity."

Inasmuch as the petition here seeks to condemn a strip 200 feet in width, and not within the one hundred foot right of way, the necessity for the taking must be determined by the judge in a judicial proceeding. The railroad company, by its engineer, Sloane, attempted to comply with the requirements of the law to establish the necessity of the taking, and it is upon the testimony of such witness principally that the court concluded that the necessity was properly established. It appears that the company, in the vicinity of the lands sought to be condemned, maintains three freight districts, viz. the North avenue freight district, the North Milwaukee freight district, and the Chestnut street freight district. Elaborate maps were introduced in evidence by the company showing the location of these various freight districts and the necessity of acquiring a strip of land such as the one sought to be condemned for freight-yard purposes, which includes storage and switching tracks.

The necessity for acquiring this strip of land for the purposes aforesaid was also shown by reason of the fact that the railroad company, in an effort to comply with the law requiring grade separation, was obliged to abandon a great many of its tracks and to furnish new facilities as a substitute for the old. Furthermore, it was also demonstrated that within the area of the three freight districts some of the largest industries of the city of Milwaukee are located, some of these industries being among the largest of their kind in the country. Such industries employ many thousands of men, who constitute a large portion of the public of the city of Milwaukee. Milwaukee is largely a manufacturing city, and its growth and prosperity depend in no small degree upon the maintenance and development of these industries. The necessity for the establishment of switching and storage yards in the most convenient location, in order that these

freight districts and these industries may be served with car facilities with promptness, requires no elucidation by argument. Such a conveniently located freight district not only conserves time but saves expense, which is reflected not only in the earnings of the railroad company but also in the cost of production of the industries located in this locality. It is also readily inferable that the facilities furnished by the land for the purposes for which it is sought to be condemned will be adequate to meet the necessities of the situation for a reasonable time in the future.

No testimony was offered or introduced in opposition to that of the petitioner upon the subject of the necessity for the taking, and every opportunity was afforded counsel for the landowners to cross-examine Mr. Sloane in order to establish his contention, viz. that there was no necessity of acquiring this strip of land, or that another strip of land was available that would suit the purposes either as well or better than the one belonging to the landowners. The court had no hesitancy in arriving at the conclusion that it did, that the requirements of necessity had been fully established.

It is further argued by counsel for the landowners that in the selection of the owners' property for the purpose of establishing these yards, the interest of the public, as represented by the City Planning Commission, has been entirely ignored. Roosevelt Drive, it is said, has been for many years planned by the Planning Commission of the city as a diagonal cross-town highway, extending from the northeasterly to a southwesterly direction across the northwest part of the city of Milwaukee, and that such highway, according to the plans now considered, would cross this land, and that such a crossing would necessitate the building of a subway or an elevated crossing, or a change in the course tentatively agreed upon, which would require a jog for about half a mile, thereby to a large extent destroying the value of the drive from the standpoint of economy of time and expense. There is no evidence in the case to indicate that the city of

Milwaukee or those representing it have raised or are now raising or are contemplating any objection to the acquirement of the lands in question, owned by these landowners; on the other hand, it does affirmatively appear that the location and acquirement of this strip of land was expressly discussed by the railroad company, through its authorized representative, and the city authorities, and that no adverse or hostile attitude was made manifest by the city. This drive, when completed, will not only serve an economic purpose by furnishing a direct route, but will also serve an æsthetic purpose. A subway or an elevated crossing would have a tendency to greatly enhance the driveway from an æsthetic standpoint. Such subways or elevated crossings appear in many other parts of Milwaukee and in Milwaukee county, and prevail in nearly every large city and in many small cities. The entire matter was before the court and considered, and its finding is amply supported by the evidence.

Counsel for the landowners argue that all the proceedings herein are void because the petitioner did not procure a certificate of convenience and necessity from the railroad commission. Sec. 191.06 of the Statutes provides as follows:

*"Railroad extensions; certificate and public notice necessary.* If any railroad company heretofore organized shall hereafter desire to extend its line or lines of railroad in this state or to build extensions or branches connected therewith, or to construct any unconstructed portion of its authorized line of railroad, or any line of railroad whatever for which the right of way and local consents and franchises have not been procured, it shall, before beginning construction thereof, make application to the railroad commission for a certificate of convenience and necessity authorizing the construction of such extension or branch or lines in the manner hereinbefore provided; except that it shall not be necessary to publish the articles of association of such railroad, but only to publish the notice of hearing of such application at least once in each week for two successive weeks preceding such hearing in one or more newspapers in each county in which said extension, branch or line is to be built."

A careful reading of sec. 191.06, above quoted, is persuasive that the procurement of a certificate of convenience and necessity from the railroad commission is confined principally to situations where the building of an extension of an existing railroad line or of a branch connected therewith is involved. The statute is headed with the title "Railroad extensions." In a sense, the construction of a branch is included in the term "extensions." This is also true with respect to the construction of an unconstructed portion of the authorized line of a railroad. Finally, for the construction of any line of railroad whatever, for which the right of way and local consents and franchises have not been procured, such certificate of convenience and necessity must first be obtained.

It is argued that that portion of sec. 191.06 which reads "or any line of railroad whatever" is broad enough to include spur tracks, side-tracks, switching tracks, and storage tracks; in other words, that it would include also the tracks to be constructed upon the 200-foot strip which is intended for storage or switching tracks. The business for which a railroad is created is the transportation from one place to another of freight or passengers. The maintenance of storage and switching yards is a mere incident to the general purpose, and such yards are necessary to facilitate the ordinary and prompt dispatch of trains. When a railroad extends its existing main tracks into a new field it extends its line, and by such extension it is probable that it will come in competition with other railroad lines. This is further so when it builds a branch railroad, or builds any portion of an unconstructed railroad, or any other line of railroad whatever. In the construction and operation of railroads and public utilities the public has a vital interest. That is the reason for the requirement of a certificate of convenience and necessity. If such certificate were not required, railroad lines would frequently be constructed in such a manner

as to create ruthless competition, together with the disastrous results flowing therefrom. Bearing this in mind, the construction placed upon sec. 191.06 by the court is readily perceived.

Counsel for the landowners place great reliance upon the decision in the case of *Menasha Woodenware Co. v. Railroad Comm.* 167 Wis. 19, 166 N. W. 435. The opinion in that case clearly distinguishes between an extension of a railroad line and the building of a spur track to serve an industry or a number of industries. In speaking of a spur track it is said:

"In its very nature it cannot serve the public in the complete manner that an extension does, because it is not intended for passenger service and it only reaches the property of one industry, or perhaps several; but its use is none the less public on the part of the one industry or the several industries which it serves, because thereby the one industry or the several industries are enabled to be reached by the public and to be served by the common carrier to the fullest extent."

In an application for the building of a spur track the railroad commission passes upon the reasonableness of the application. In the application for the building of an extension or a branch line, the public is represented by the commission primarily to avoid ruthless competition between carriers. In authorizing the construction of a spur track the commission acts primarily to facilitate the business of one or several industries. So that we are unable to perceive that the *Menasha Woodenware Case* is of any benefit or service to the landowners herein in the instant case.

If the legislature had in mind the necessity of the procurement of a certificate of convenience and necessity in a case like that herein, its intention could have been readily made clear in the wording of the statute. Instead of that, however, no language is used in the statute which can reasonably be interpreted in accordance with the claim of counsel for the landowners.

Ordinarily, the use of the words "or any line of railroad whatever" would signify the main or a branch line of railroad. Without specifically setting forth the provisions of sec. 190.12, and particularly sub. (3) and (4) thereof, also secs. 190.16 and 190.17, we particularly refer to such sections, because the distinction is there clearly drawn between extensions and branches and switching and storage tracks.

Counsel for the landowners contend that the description of the land in the petition is erroneous. The land in the petition is described as follows:

"Part of the north one-half (N. ½) of the southeast quarter (S. E. ¼) of section numbered one (1), in township numbered seven (7) north, of range numbered twenty-one (21) east, in the town of Wauwatosa, described as a strip of land 200 feet in width lying westerly of and adjacent to the present 100-foot right of way of the petitioner, where the same crosses the southeast quarter (S. E. ¼) of section 1–7–21 above mentioned."

It appears from the evidence that the railroad company only crossed the north one-half of the southeast one-quarter at one point, and that was in the northwest one-quarter of the southeast one-quarter; and the north one-half of the southeast one-quarter contains the northeast one-quarter of the southeast one-quarter. The description, however, was made reasonably definite by a reference to a map which was introduced in evidence.

Counsel for the landowners also contend that the petitioner has not the right to condemn more than one hundred feet of land for the purposes herein proposed. We would respectfully call attention to the provisions of sec. 190.17 of the Statutes, which constitute a full and complete answer to the contention here made.

*By the Court.*—The order appointing the commissioners herein is affirmed.